FILED

MAY 0 5 2005



CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| MICHAEL N. LINDHOLM, | \* | CIV. 04-4025 |
| Plaintiff, | \* | |
| -vs- | \* | **MEMORANDUM OPINION** |
| | \* | **AND ORDER** |
| ADEL A.F. HASSAN, M.D., | \* | |
| Defendant. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

In this diversity medical malpractice action, Defendant, Adal A.F. Hassan, M.D., has filed a document entitled "Motion Re: Medical Expenses." Doc. 15. In his motion, Defendant has requested that this Court issue an order prohibiting Plaintiff, Michael N. Lindholm, from presenting evidence at trial of the amount billed for medical services rendered to Plaintiff but "written off" by his medical providers pursuant to requirements of Medicare. Plaintiff has submitted his brief opposing the motion. Doc. 17. After considering the briefs, argument of counsel, and all applicable law, this Court is denying the motion.

## DISCUSSION

Plaintiff alleges in his complaint that Defendant, a physician who is now a resident of Kentucky, cut or otherwise injured Plaintiff's common hepatic duct while performing a laparoscopic cholecystectomy. Plaintiff alleges that his damages include extensive past medical expenses and future medical expenses. Plaintiff's total claim for medical expenses exceeds $102,000. This claim for medical expenses represents the medical expenses billed by Plaintiff's providers. Plaintiff, however, at all times material, has qualified for Medicare benefits. Medicare, the federally funded medical insurance program for the elderly and disabled, was established as part of the Social Security Act, and is funded and administered by the federal government. 42 U.S.C. §§ 1395, *et seq.*

When a healthcare provider contracts to provide medical services to patients covered under Medicare it agrees to certain fee schedules and agrees to accept as full payment less than the amount

billed to the patient. It is by operation of law that the healthcare provider must write off the remaining balance and cannot collect any further payment on the remaining amount. *See* 42 U.S.C. § 1395cc and 42 C.F.R. § 489.21(a). A wage earner such as Plaintiff does contribute monetarily toward the cost of Medicare.

At the time of the pretrial hearing, counsel for Plaintiff had not ascertained the amount of the write-offs. It is undisputed that a portion of the medical bills was "written off" and a substantially lower amount was paid by Medicare to satisfy payment of the medical bills. Plaintiff contends that the collateral source rule precludes the relief Defendant is requesting in the motion in issue. Defendant contends that the collateral source rule is inapplicable to this case.

In a diversity action alleging negligence, a federal court applies the law of the forum state. *Jordan v. NUCOR Corp.,* 295 F.3d 828, 834 (8th Cir. 2002). Normally, questions of relevance and admissibility of evidence are determined by federal law. *Clark v. Martinez,* 295 F.3d 809, 814 (8th Cir. 2002). However, if the evidentiary issue is intertwined with a state's substantive policy, as it is in a matter involving the collateral source rule, state law governs. *See Wolfe v. Gilmour Mfg. Co.,* 143 F.3d 1122 (8th Cir. 1998) (applying Nebraska collateral source rule in diversity action). This Court must then apply South Dakota law in deciding Defendant's Motion.

The Collateral Source Rule

The collateral source rule was recognized and adopted by the South Dakota Supreme Court in *Moore v. Kluthe & Lane Ins. Agency, Inc.,* 234 N.W.2d 260 (S.D. 1975), a case in which the plaintiff prevailed on a negligent misrepresentation claim for a defendant's misrepresentation that an insurance policy provided flood coverage. In that case, the South Dakota Supreme Court defined the collateral source rule as follows. "'Total or partial compensation received by an injured party from a collateral source, wholly independent of the wrongdoer, does not operate to reduce the damages recoverable from the wrongdoer.'" *Id.* at 269 (quoting *Gersick v. Shilling,* 97 Cal. App.2d 641, 218 P.2d 583, 589 (1950)). The South Dakota Supreme Court explained the purpose of the collateral source rule as follows:

> "No reason in law, equity or good conscience can be advanced why a wrongdoer should benefit from part payment from a collateral source of damages caused by his wrongful act. If there must be a windfall certainly its is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full

responsibility for his wrongdoing."

234 N.W.2d at 269 (quoting *Grayson v. Williams*, 256 F.2d 61, 65 (10th Cir. 1958)).

In *Degen v. Bayman*, 241 N.W.2d 703 (S.D. 1976), the South Dakota Supreme Court examined the collateral source rule in the context of a personal injury action in which a portion of the Plaintiff's medical services was rendered free of charge by the Shriners Hospital for Crippled Children. In the *Degen* case, the South Dakota Supreme Court elaborated on the collateral source rule as follows:

> "The general rule is that a plaintiff who has been injured by the tortious conduct of the defendant is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury. This is a recovery for their value and not for the expenditures actually made or obligations incurred. Thus, under this general rule, the fact that the medical and nursing services were rendered gratuitously to the one who was injured will not preclude the injured party from recovering the value of those services as a part of his compensatory damages. Accordingly, the plaintiff's recovery will not be reduced by the fact that the medical expenses were paid by some source collateral to the defendant, such as by a beneficial society, by members of the plaintiff's family, by the plaintiff's employer, or by an insurance company."

*Id.* at 708 (quoting 22 Am. Jur.2d, *Damages*, § 207).

The South Dakota Supreme Court has continued to apply the collateral source rule and has so far declined to apply an exception[1] to the collateral source rule. *See Jurgensen v. Smith*, 611 N.W.2d 439 (S.D. 2000)(mere fact that defendant motorist's financial status was introduced at trial

---

[1] The South Dakota Legislature, however, has enacted an exception to the collateral source rule as it applies to certain health care malpractice actions. S.D.C.L. § 21-3-12 provides:

> In any action for damages for personal injury or death alleging health care malpractice on the part of any physician, chiropractor, dentist, hospital, registered nurse, licensed practical nurse, or other practitioner of the healing arts, whether founded upon tort or contract, if it is alleged that the claimant suffered special damages by reason of such injury or death, evidence shall be admissible which is relevant to prove that any such special damages were paid for or are payable by, in whole or in part, insurance which is not subject to subrogation and which was not purchased privately, in whole or in part, by the claimant, claimant's decedent, or a member of the immediate family of claimant or claimant's decedent, or were paid for, or are payable by, in whole or in part, state or federal governmental programs not subject to subrogation.

Medicare is subject to subrogation.

did not open the door for plaintiff to introduce evidence that defendant received financial benefits from collateral source). The South Dakota Legislature has also established limitations regarding the admissibility of evidence of insurance. *See* S.D.C.L. § 19-12-13.[2]

Although the South Dakota Supreme Court has not yet determined whether the collateral source rule applies when Medicare pays a plaintiff's medical bills, the Restatement (Second) of Torts § 920A, comment c, includes social legislation benefits as those benefits to which the collateral benefits rule applies.[3] The Court concludes that the South Dakota Supreme Court would follow the position of the Restatement (Second) of Torts in this matter.[4] Defendant does not challenge that conclusion, and, in fact, is not seeking to preclude evidence of the amount of medical expenses actually paid for by Medicare. Defendant is seeking only to preclude evidence of the "write-offs" that were never paid by any entity.

Whether Medicare Write-Offs Fall Within the Scope of the Collateral Source Rule?

Defendant relies on cases from other jurisdictions that hold that a plaintiff's damages are limited to the amount of medical expense actually paid and that amounts that are "written off" should be excluded. *See, e.g., Wildermuth v. Staton*, 2002 WL 922137 (D.Kan)(not reported in F.Supp.2d)(court rules that collateral source rule, by its express terms, does not apply to Medicare write-offs that are never paid); *Moorhead v. Crozer Chester Medical Center*, 564 Pa. 156, 65 A.2d

---

[2]S.D.C.L. § 19-12-13 provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This section does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

[3]The Restatement (Second) of Torts § 920A(2) provides: "Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."

[4]In numerous cases, the South Dakota Supreme Court has adopted or maintained a position on tort issues which is consistent with the law as set forth in the Restatement (Second) of Torts. *See, e.g., State v. Rumpca*, 652 N.W.2d 795 (S.D. 2002)(§§ 158(a) and 159(1)); *Fisher v. Kahler*, 641 N.W.2d 122 (S.D..2002)(§ 552); *Blaha v. Stuard*, 640 N.W.2d 85 (S.D. 2002)(§ 402A); *Tibke v. McDougall*, 479 N.W.2d 898 (S.D. 1992)(§§ 766 and 766B).

786 (2001)(court rules that Plaintiff is not entitled to "illusory" medical charges that neither Medicare nor her "Blue Cross 65" supplemental plan actually paid); *Bates v. Hogg*, 921 P.2d 249 (Kan. App. 1996)(plaintiff could not apply collateral source rule to include as damages amounts that were written off by healthcare provider in conjunction with Medicaid contract), *rev'd on other grounds by Frans v. Gausman*, 6 P.3d 432 (Kan. Ct. App. 2000); *Terrell v. Nanda*, 759 So.2d 1026, 1031 (La. App. 2000)(plaintiffs could not recover portion of medical expenses contractually adjusted pursuant to the requirements of the Medicaid program);[5] *Hanif v. Housing Auth.*, 200 Cal.App.3d. 635, 643, 246 Cal.Rptr. 192 (1988)(plaintiff could recover as special damages for medical care only the amount actually paid by Medi-Cal on plaintiff's behalf).

Defendant also cites to *Jackson v. Lee's Travelers Lodge, Inc.*, 563 N.W.2d 858 (S.D. 1997), as case in which "the South Dakota Supreme Court refused to apply the collateral source rule to allow a plaintiff to collect medical expense damages which were never incurred by him but were instead paid by the State of South Dakota." The *Jackson* case, however, is not applicable because it involves a workers' compensation claim, not a tort cause of action. In briefly discussing the collateral source rule, the South Dakota Supreme Court noted the defendant "was not found to be a torfeasor, only an employer." *Id.* at 868 n.11.

In addition, Defendant cites to SDCL § 21-3-1, which provides that in a tort action, the measure of damages is "the amount which will compensate for all the detriment proximately caused" by the conduct of the tortfeasor. Defendant cites South Dakota law which provides that "the sole objective of compensatory damages is to make the injured party whole." *See Hulstein v. Meilman Food Industries, Inc.*, 293 N.W.2d 889, 891 (S.D. 1980). Defendant argues that given that the purpose behind compensatory damages is making the Plaintiff whole, the reasonableness of Plaintiff's medical expenses is determined with reference to the amount actually paid for those services, i.e., the amount actually paid by Medicare. Defendant relies on the Restatement (Second)

---

[5]In *Rose v. Via Christi Health Sytem, Inc.*, 276 Kan. 539, 78 P.3d 798 (2003), the Supreme Court of Kansas distinguished Medicaid from Medicare cases based on the recipient's contribution for Medicare coverage, and applied the collateral source rule to amounts written off pursuant to Medicare requirements. Medicaid is a medical insurance program jointly funded by the federal and state governments, but administered by the individual states.42 U.S.C. §§ 1395 *et seq.*

of Torts § 911, comment h, which deals with the value of services rendered in establishing damages. Comment h to § 911 provides in part:

> When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged. If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid, except when the low rate was intended as a gift to him.

However, a number of courts, relying on the collateral source rule, have permitted recovery as special damages for the portion of medical bills that was written off by healthcare providers in accordance with Medicare or Medicaid rules and regulations. *See, e.g., Parker v. Spartanburg Sanitary Sewer Dist.,* 607 S.E.2d 711 (S.C. App.2005)(collateral source rule barred admission of amounts actually paid by Medicare toward motorist's total medical bills); *Bynum v. Magno,* 101 P.3d 1149 (Haw. 2004)(collateral source rule prohibited reducing patient's damages award to reflect discounted Medicare and Medicaid Payments); *Rose v. Via Christi Health System,* 78 P.3d 798 (Kan. 2003)(hospital in medical malpractice action not entitled to limit damage award by the portion of medical bills that were written off pursuant to contract with Medicare); *Haselden v. Davis,* 579 S.E.2d 293 (S.C. 2003)(plaintiff seeking damages for the cost of medical services is entitled to recover the reasonable value of those medical services, not necessarily the amount paid by Medicaid); *Wal-mart Stores Inc. v. Frierson,* 818 So.2d 1135 (Miss. 2002)(evidence of medical expenses which had been written off by medical providers pursuant to Medicare and Medicaid regulations was admissible); (*Williamson v. Odyssey House Inc.,* 2000 WL 1745101, 2000 U.S.Dist. Lexis 16396 (D. N.H. Nov. 30, 2000)(unpublished opinion)(in applying collateral source rule and standard for measure of damages for medical costs, court concludes that the reasonable value of medical serves is the proper measure of service, regardless of the amount paid for the services by Medicaid); *Candler Hosp. Inc. v. Dent,* 491 S.E.2d 868 (Ga. App. 1997)(plaintiff can prove medical expenses damages undiminished by any amount written off by defendant pursuant to Medicare regulations); *Brown v. Van Noy,* 879 S.W.2d 667 (Mo.App. W.D. 1994)(expenses written off as part

of Medicare coverage considered medical charges submitted and paid).[6]

Relying on the above cases as authority, Plaintiff maintains it is irrelevant whether the medical write-offs given to him were required by operation of law, and that the write-offs are conceptually the same as gratuitous services. *See Bynum,* 101 P.3d at 1156. Plaintiff further maintains that discounted medical expenses are not materially different than expenses paid by insurance or another source. *See Brown v. Van Noy,* at 676. Plaintiff contends that the collateral source rule is clearly applicable to this action and as such, he should recover the reasonable value of his medical expenses, including the portions that were written off. Plaintiff further contends Defendant is legally responsible for causing Plaintiff's injuries and should not be relieved of his obligation to Plaintiff simply because Plaintiff was disabled and received benefits from Medicare, a collateral source. Plaintiff, in support of his position, also relies on South Dakota Pattern Jury Instruction (Civil) No. 30-06, which provides recovery for the "the reasonable value of necessary medical care, treatment, and services received [and the reasonable value of the necessary medical expense of medical care, treatment and services reasonably certain to be received in the future.]" Plaintiff contends that this pattern jury instruction entitles him to recover the "reasonable value" of medical services provided to him regardless of the amount actually paid for the medical services.[7]

---

[6]In *Acuar v. Letourneau,* 531 S.E.2d 316, 322-23 (Va. 2000), the Virginia Supreme Court held that the proper measure of damages for medical expenses included the amounts that had been written off by the plaintiff's health care providers. This decision significantly undermined contrary decisions issued by the federal district courts in Virginia. *See Mitchell v. Hayes,* 72 F.Supp.2d 635 (W.D.Va. 1999); *Ward-Conde' v. Smith,* 19 F.Supp.2d 539, 541-42 (E.D.Va. 1998).

[7]The Court notes that the Comment to South Dakota Pattern Jury Instruction (Civil) No. 30-06 cites to *Degan v. Bayman,* 241 N.W.2d 703 (S.D. 1976), as holding that a plaintiff is entitled to recover the reasonable value of medical care received, even if it was gratuitously provided because the provision of the care came from a collateral source. The comment also acknowledges authority from other jurisdictions holding that the portion of a health care provider's medical fee that is written off because of a contract with the health insurer is not a collateral source for purposes of the collateral source rule. *See State Farm Mut. Auto Ins. Co. v. Bowers,* 255 Va. 581, 500 S.E.2d 212 (1998).

## CONCLUSION

The Court concludes that the position of Plaintiff with regard to the treatment of the Medicare "write-offs" is more consistent with South Dakota law than is the position of Defendant. This Court agrees that Plaintiff is entitled to the reasonable value of the medical services he received. The Court has concluded that the South Dakota Supreme Court would follow the position of Restatement (Second) of Torts § 920A and comment c to that section, which includes social legislation benefits as those benefits to which the collateral benefits rule applies.[8] Consequently, the Court also finds comment b to § 920A instructive. This comment provides in part:

> [Collateral-source benefits] do not have the effect of reducing the recovery against the defendant. The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury. But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party <u>or established for him by law</u>, he should not be deprived of the advantage that it confers. <u>The law does not differentiate between the nature of the benefits</u>, so long as they did not come from the defendant or a person acting for him.

Restatement (Second) of Torts § 920A, cmt. b (emphasis added). The Restatement also provides: "[The collateral source rule] applies to cash gratuities and to the rendering of services. Thus, the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services." Restatement (Second) of Torts § 920A, cmt. c illus. 3.

As the Court stated during the pretrial motions hearing in this matter, in the context of the collateral source rule, it is difficult to make a meaningful distinction between services provided by

---

[8]The more specific Restatement rule and comments thereto regarding collateral source benefits would prevail over the more general rule and comments thereto regarding value of property or services. *See, e.g., United Brass Works, Inc., v. American Guarantee and Liability Ins. Co.*, 819 F.Supp. 465, 469 (W.D. Pa. 1992)( court recognizes that the Restatement (Second), Conflict of Laws, is comprised of rules ranging from rules of very general application, to rules that apply to only very specific cases and that essentially preempt the more general rules).

the federal government to a veteran in a veterans hospital who "paid in" by serving his or her country, and Medicare benefits provided at a reduced cost to a Medicare beneficiary who paid in at least a portion of the cost of that program. Any distinction is of clearly limited relevance since the law does not differentiate between the nature of the benefits in the application of the collateral source rule.

Under South Dakota law, a plaintiff who has been injured by the tortious conduct of a defendant is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury, not the expenditures actually made or obligations incurred for theses services. *Degen v. Bayman*, 241 N.W.2d at 708; *see also, Nepstad v. Randall*, 152 N.W.2d 383, 387 (S.D. 1967) ("Defendant does not complain of the instructions allowing recovery for the reasonable value of medical and hospital services."); South Dakota Pattern Jury Instruction (Civil) No. 30-06.The reasonable value of medical services is not controlled by whether a portion or all of the medical bills was paid as a gift, or written off pursuant to an insurance agreement or by operation of law.

The determination of the amount of damages to which a plaintiff is entitled is a question for the jury. *See Berry v. Risdall*, 576 N.W.2d 1, 4 (S.D. 1998). The question remaining is what evidence other than the full bill can be introduced as to the reasonable value of the services.As the Court advised during the pretrial motions hearing, counsel should be prepared to present evidence of the necessity and the reasonable value of these medical services at the trial in this case. This Court believes the South Dakota Supreme Court would follow the rationale and the conclusion of the South Carolina Supreme Court in *Covington v. George*, 597 S.E.2d 142, 144 (S.C. 2004), regarding what evidence is admissible in establishing damages for medical services. Showing to the jury the amount mandated by law for Medicare payment is precluded by the collateral source rule.[9] Unless and until

---

[9]It may well be that few patients or third party payees pay the full amount of a patient's bill. It may be in some cases that the experts would be prepared, as a part of their testimony and opinion, to say what various insurance and other plans would pay. At the pretrial conference in the present case, neither party was sure even what Medicare had paid. That uncertainty indicates the difficulty, as well as the confusion to a jury, of experts testifying hypothetically what insurers and other plans would pay in this case. It may be that in some other case the experts would be prepared to testify, in what would appear to the jury to be hypothetically, what a variety of plans would pay, as being some evidence of what was the value of the professional services. If the actual collateral source payment was presented as one of a number of hypothetical payments in

the South Dakota Legislature changes the rule and makes another exception to the collateral source rule, the amount, if any, paid by collateral sources will not be admissible as evidence to show what was the reasonable value of the services. Accordingly,

IT IS ORDERED that Defendant's "Motion Re: Medical Expenses" (Doc. 15) is denied.

Dated this 5 day of May, 2005.

BY THE COURT:

Lawrence L. Piersol

ATTEST:

JOSEPH HAAS, CLERK
BY:
(SEAL)        DEPUTY

Chief Judge

---

support of some expert opinion on the reasonable value of those services - then  that evidence would not violate the collateral source rule if it was made clear that the examples were all hypotheticals of what various plans could pay for the services in question.